**Oscar ADOLF, Plaintiff,**

v.

**A.P.I., INC., et al., Defendants.\***

**Civ. Nos. A1–89–98 thru A1–89–138, A1–89–45 and A1–89–46.**

United States District Court,
D. North Dakota,
Southwestern Division.

Nov. 14, 1989.

---

\* Together with: Anderson (Charles) v. A.P.I., Inc., et al., Civ. No. A1–89–099; Bossert (Ed-

ward) v. A.P.I., Inc., et al., Civ. No. A1–89–100; Bunnell (George) v. A.P.I., Inc., et al., Civ. No.

Michael D. McNair, Lamb, McNair Law Firm, Fargo, N.D., for Asbestos Corp., Ltd. and Atlas Turner, Inc.

Ralph Walker, Davis, Hockenberg Law Firm, Des Moines, Iowa, Ronald McLean, Serkland Law Firm, Fargo, N.D., for Armstrong World Ind., Inc., Flexitallic Gasket Co., Inc., GAF Corp., Keene Corp., U.S. Gypsum Co., A.P. Green, National Gypsum,

Turner Asbestos, Turner Newell and Union Carbide.

Mary Terzino, and John Borger, Faegre & Benson, Minneapolis, Minn., for Owens–Corning Fiberglas Corp.

Eugene D. Buckley, Collins, Buckley Law Firm, St. Paul, Minn., for Fibreboard Corp., Owens–Illinois, Inc., Pittsburgh Corning Corp.

Colleen Saande, Dosland Law Firm, Moorhead, Minn., for U.S. Mineral Products.

Jon Parrington, Pustorino Law Firm, Minneapolis, Minn., for MacArthur Corp.

Paul Oppegard, Gunhus Law Firm, Moorhead, Minn., and Wayne A. Hergott, Moss & Barnett, P.A., Minneapolis, Minn., for Flintkote.

Kyle B. Mansfield, Meagher Law Firm, Minneapolis, Minn., for A.H. Bennett, S.O.S. Products.

Steven Storslee, Fleck Law Firm, Bismarck, N.D., for W.R. Grace & Co.

Robert Cragg, Cragg & Fobbe, Hopkins, Minn., for A.P.I., Inc.

William Lucas, Lundberg Law Firm, Bismarck, N.D., for Building Sprinkler Co.

Patrick Fisher, McConn Law Firm, Grand Forks, N.D., for Combustion Engineering.

A1–89–101; Clooten (Robert) v. A.P.I., Inc., et al., Civ. No. A1–89–102; Daub (Roger) v. A.P.I., Inc., et al., Civ. No. A1–89–103; Denzel (Richard) v. A.P.I., Inc., et al., Civ. No. A1–89–104; Forstner (Stanley J.) v. A.P.I., Inc., et al., Civ. No. A1–89–105; Gilchrist (Boyd) v. A.P.I., Inc., et al., Civ. No. A1–89–106; Glasser (Robert) v. A.P.I., Inc., et al., Civ. No. A1–89–107; Hanson (Leslie) v. A.P.I., Inc., et al., Civ. No. A1–89–108; Heck (Richard) v. A.P.I., Inc., et al., Civ. No. A1–89–109; Jessen (Douglas) v. A.P.I., Inc., et al., Civ. No. A1–89–110; Johnson (Alvin) v. A.P.I., Inc., et al., Civ. No. A1–89–111; Kautzman (Kenneth) v. A.P.I., Inc., et al., Civ. No. A1–89–112; Ketterling (Martin) v. A.P.I., Inc., et al., Civ. No. A1–89–113; Kinsella (James) v. A.P.I., Inc., et al., Civ. No. A1–89–114; Klein (Ben) v. A.P.I., Inc., et al., Civ. No. A1–89–115; Kuntz (John) v. A.P.I., Inc., et al., Civ. No. A1–89–116; LaFountain (Alfred) v. A.P.I., Inc., et al., Civ. No. A1–89–117; Lais (Myles) v. A.P.I., Inc., et al., Civ. No. A1–89–118; Lang (Louis) v. A.P.I., Inc., et al., Civ. No. A1–89–119; Loeb (Teanus) v. A.P.I., Inc., et al., Civ. No. A1–89–120; MacMartin (L.D.) v. A.P.I., Inc., et al., Civ. No. A1–89–121; Morrell (John) v. A.P.I., Inc., et al., Civ. No. A1–89–122; Morrell (Stephen) v. A.P.I., Inc., et al., Civ. No. A1–89–123; Noakes (Noel) v. A.P.I., Inc., et al., Civ. No. A1–89–124; Olofson (John) v. A.P.I., Inc., et al., Civ. No. A1–89–125; Poppke (Walter) v. A.P.I., Inc., et al., Civ. No. A1–89–126; Poukka (Richard) v. A.P.I., Inc., et al., Civ. No. A1–89–127; Rathjen (Darrell) v. A.P.I., Inc., et al., Civ. No. A1–89–128; Riedinger (Pete) v. A.P.I., Inc., et al., Civ. No. A1–89–129; Solum (Vernon) v. A.P.I., Inc., et al., Civ. No. A1–89–130; Stanek (Donald) v. A.P.I., Inc., et al., Civ. No. A1–89–131; Thompson (Gene) v. A.P.I., Inc., et al., Civ. No. A1–89–132; Unser (Frank) v. A.P.I., Inc., et al., Civ. No. A1–89–133; Voeller (Virgil) v. A.P.I., Inc., et al., Civ. No. A1–89–134; Vogel (Eugene) v. A.P.I., Inc., et al., Civ. No. A1–89–135; Vogel (Joe) v. A.P.I., Inc., et al., Civ. No. A1–89–136; Willson (Frank) v. A.P.I., Inc., et al., Civ. No. A1–89–137; Winbauer (Joe) v. A.P.I., Inc., et al., Civ. No. A1–89–138; Matthews (LaVon) v. A.P.I., Inc., et al., Civ. No. A1–89–145; Hatzenbihler (Betty) v. A.P.I., Inc., et al., Civ. No. A1–89–146.

Duane Arndt, Arndt & Benton, P.A., Minneapolis, Minn., for Eagle–Picher.

Gerald Haga, Degnan Law Firm, Grand Forks, N.D., for Crane Packing.

Patrick Morley, O'Grady Law Firm, Grand Forks, N.D., for Garlock, Inc.

Stephen Plambeck, Nilles Law Firm, Fargo, N.D., for Empire Ace Insulation.

Doug Herman, Vogel Law Firm, Fargo, N.D., for Grant Wilson.

Elizabeth Runyan Greise, Shea & Gardner, Washington, D.C., for Cassiar Mining Corp.

Michael Fiergola, Zuger, Kirmis Law Firm, Bismarck, N.D., for Carey–Canada, Inc. Celotex Corp.

Robert Bennett, Bennett Law Firm, Minneapolis, Minn., for Crown Cork & Seal Co.

B. Timothy Durick, Pearce & Durick, Bismarck, N.D., for Rutland Fire & Clay.

Richard Jeffries, Jeffries Law Firm, Moorhead, Minn., for SEPCO.

George Soule, Bowman & Brooke, Minneapolis, Minn., and Steven Cahill, Cahill Law Firm, Moorhead, Minn., for Hercules Chemical.

Gary D. Sharp, MacArthur Law Firm, Detroit, Mich., and Michael Nelson, Ohnstad, Twitchell, West Fargo, N.D., for Southern Textile, H.K. Porter Co.

Susan M. Hansen, Stich, Angell Law Firm, Minneapolis, Minn., and Craig Richie, Richie & Associates, Fargo, N.D., for Asbestos Product Mfg. Corp., Asbestospray Corp., Spraycraft Corp., H. & A. Const. Corp.

David Walker, Sproul Law Firm, Valley City, N.D., for F & C Supply, Inc.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

### INTRODUCTION

Oscar Adolf and the other 41 plaintiffs are workers and their families. Plaintiffs claim that exposure to asbestos fibre has caused them personal injury in the form of pulmonary asbestos-caused disease and disability. In total, forty-two defendants have been named, including those who mined, manufactured, processed, imported, converted, compounded, retailed, or wholesaled substantial amounts of asbestos.**

** EDITOR'S NOTE: The following is a complete listing of all defendants herein: A.P.I., Inc.; Armstrong World Industries, Inc. (individually and as successor-in-interest to Armstrong Cork Company and Keasbey & Mattison Company); Atlas Turner, Inc.; A.H. Bennett Company; Asbestos Corporation, Ltd.; Asbestos Product Manufacturing Corporation; Asbestospray Corporation, (individually and as successor-in-interest to Asbestos Product Manufacturing Corporation); Building Sprinkler Co., Inc.; Carey Canada, Inc.; Cassiar Mining Corporation, Ltd.; The Celotex Corporation (as successor-in-interest to Philip Carey Manufacturing Company, Philip Carey Corporation, Briggs Manufacturing Company, Panacon Corporation, and Smith & Kanzler Co., Inc.); Combuston Engineering, Inc. (as successor-in-interest to Refactory & Insulation Corporation, R & I–Ramtite Corporation, and M.H. Detrich Co., Inc.); Crane Packing Co.; Crown Cork & Seal Company, Inc. (individually and as successor-in-interest to Mundet Cork Corporation); Eagle–Picher Industries, Inc.; Empire Ace Insulation Manufacturing Corporation, Inc.; Fibreboard Corporation (individually and as successor-in-interest to Plant Rubber and Asbestos Company, Pabco Insulation Corporation, and Fibreboard Paper Products Corporation); Flexitallic Gasket Co., Inc.; Flintkote Company; GAF Corporation (individually and as successor-in-interest to The Ruberoid Company); Garlock, Inc.; Grant Wilson, Inc.; W.R. Grace & Co., (individually and as successor-in-interest to Zonolite Company and Western Mineral Products Company); A.P. Green Refractories Co.; H. & A. Construction Corporation (individually and as successor-in-interest to Asbestos Product Manufacturing Corporation, Asbestospray Corporation and Spraycraft Corporation); Hercules Chemical Co.; Keene Corporation (individually and as successor-in-interest to Ehret Magnesia Manufacturing Company, Baldwin–Hill Company, Baldwin–Ehret–Hill, Inc., Keene Building Products Corporation and Mundet Cork Corporation); MacArthur Corporation; National Gypsum Company; Owens–Corning Fiberglas Corp.; Owens–Illinois, Inc.; Pittsburgh Corning Corporation (individually and as successor-in-interest to Unarco Industries, Inc.); Rutland Fire & Clay; SEPCO Corporation; S.O.S. Products; Southern Textile Corporation (a subsidiary of H.K. Porter Company, and successor-in-interest to Southern Asbestos Company); Spraycraft Corporation (individually and as successor-in-interest to Asbestos Product Manufacturing Corporation and Asbestospray Corporation); Turner Asbestos Fibres, Ltd. (a subsidiary of Turner & Newall PLC and successor-in-interest to Keasbey & Mattison Company); Turner & Newall PLC (individually and as successor-in-interest to Turner & Newall, Ltd. and Keasbey & Mattison

This action is in federal court pursuant to 28 U.S.C. § 1441, which provides for removal from state court for actions against a foreign state or political subdivision. § 1441(d) allows removal even if some of the defendants are of the same residence as the plaintiffs. § 1441(d) also dictates that the case shall be tried by the court without a jury.

On August 4, 1981 Lac d' Amiante du Quebec, Ltee (LAQ), one of the defendants, filed a motion to dismiss for lack of personal jurisdiction. LAQ asks the Court to "dismiss Plaintiffs' Complaints as to it on the grounds and for the reasons that this Court lacks jurisdiction over its corporate person and Plaintiffs' attempt to have this Court exercise such jurisdiction in this forum violates its constitutional right to due process of law." Under the Local Rules, parties have ten days to respond to motions to dismiss. *See* Local Rule 5(a). Plaintiffs filed a memorandum in opposition to defendant's motion on August 25, 1989. Plaintiffs apparently mistook defendant's motion to dismiss as one for summary judgment with its twenty day response period. *See* Local Rule 5(b). Nonetheless, the Court has considered plaintiffs' brief.

## FACTS

Some of the plaintiffs asserting claims were pipefitters, boilermakers, millwrights, and ironworkers. The plaintiff's trade, they claim, exposed them to asbestos and asbestos containing products mined, manufactured, and distributed by the various defendants in these cases. Plaintiffs assert that this exposure to asbestos caused them to sustain personal injuries in the form of pulmonary asbestos caused disease. Several family members of these workers also claim that they were injured as a result of exposure to their family member's asbestos-contaminated clothing.

Based on an interrogatory answer by defendant Armstrong World Industries, a manufacturer of asbestos products, LAQ supplied asbestos to Armstrong. LAQ also supplied asbestos to defendants Johns–Manville, Owens–Corning, H.K. Porter, Fibreboard, and Raymark. Plaintiffs also assert that LAQ has not responded to discovery requests, including jurisdictional interrogatories served upon it on June 15, 1989. In its recent motion, however, defendant asserts that it mined, milled, and sold raw asbestos and that such asbestos was all sold F.O.B. Quebec, Canada. LAQ is and has been a Delaware corporation since 1952. LAQ has also taken advantage of the United States courts as a plaintiff on other occasions. *See Lac d'Amiante du Quebec, Ltee v. American Home Assurance Co.*, 864 F.2d 1033 (3rd Cir.1988).

In its affidavit, LAQ asserts that it has never solicited sales or business in North Dakota, and never sold asbestos containing products to North Dakota customers.

Company); U.S. Gypsum Co.; U.S. Mineral Products Company (individually and as successor-in-interest to Turner & Newall, Ltd. and Keasbey & Mattison Company) and Union Carbide Corp., Defendants in Nos. A1–89–98 thru A1–89–138 and A1–89–146; A.P.I. Inc.; Armstrong World Industries, Inc. (individually and as successor-in-interest to Armstrong Cork Company and Keasbey & Mattison Company); A.H. Bennett Company; Asbestos Corporation Ltd.; Building Sprinkler Co., Inc.; Carey Canada, Inc.; Cassiar Mining Corporation, Ltd.; UE & C–Catalytic, Inc.; The Celotex Corporation (as successor-in-interest to Philip Carey Manufacturing Company, Philip Carey Corporation, Briggs Manufacturing Company, Panacon Corporation, and Smith & Kanzler Co., Inc.); CertainTeed Products Corporation; Crown Cork & Seal Company, Inc. (individually and as successor-in-interest to Mundet Cork Corporation); Eagle–Picher Industries, Inc.; F & C Supply; Fargo–Moorhead Insulation, Inc.; Fibreboard Corporation (individually and as successor-in-interest to Plant Rubber and Asbestos Company, Pabco Insulation Corporation, and Fibreboard Paper Products Corporation); Flexitallic Gasket Co., Inc.; Flintkote Company; GAF Corporation (individually and as successor-in-interest to The Ruberoid Company); Garlock, Inc.; A.P. Green Refractories Co.; H.K. Porter Company, Inc.; Keene Corporation (individually and as successor-in-interest to Ehret Magnesia Manufacturing Company, Baldwin–Hill Company, Baldwin–Ehret–Hill, Inc., Keene Building Products Corporation and Mundet Cork Corporation); MacArthur Corporation; Owens–Corning Fiberglas Corp.; Owens–Illinois, Inc.; Pittsburgh Corning Corporation, (individually and as successor-in-interest to Unarco Industries, Inc.); Rock Wool Manufacturing Company; Southern Textile Corporation (a subsidiary of H.K. Porter Company, successor-in-interest to Southern Asbestos Company) and Union Carbide Corporation, Defendants in No. A1–89–145.

LAQ further asserts that it has never contracted to supply North Dakota, maintain an office in North Dakota, or appointed or authorized any agent to accept process for suit in North Dakota. Finally, LAQ claims it has never brought suit in a North Dakota court, or availed itself of the benefits of North Dakota law in any way.

## ISSUES

1) Whether defendant LAQ is subject to personal jurisdiction in this Court.

   A) North Dakota's Long–Arm Statute.

   B) Due Process Considerations.

   C) The Eighth Circuit's Five–Part Test.

## DISCUSSION

I. *Personal Jurisdiction*

When determining whether personal jurisdiction exists over a given party, a two-prong analysis is used. *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225 (8th Cir.1987). First, the party must fall within the provisions of the forum state's long-arm statute, a device which confers jurisdiction over a non-resident defendant. *Id.* If the party does indeed fit within the long-arm statute, the court must then consider whether the exercise of personal jurisdiction over the non-resident defendant offends notions of due process and fairness. *Id.*

A) North Dakota's Long–Arm Statute

North Dakota's long-arm statute is laid out in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. Rule 4(b)(2) states:

> Rule 4–PERSONS SUBJECT TO JURISDICTION—PROCESS—SERVICE
>
> (b) *Jurisdiction of person*
>
> (2) *Personal jurisdiction is based upon contacts.* A court of this state may exercise personal jurisdiction over a person who acts directly or by an agent as to any claim for relief arising from the person's having such contact with this state that the exercise of personal jurisdiction over him does not offend against traditional notions of justice or fair play or the due process

of law, under one or more of the following circumstances:

> (A) Transacting any business in this state;
>
> (B) Contracting to supply or supplying service, goods, or other things to this state; [and]
>
> (C) Committing a tort within or without this state causing injury to another person or property within this state.

In considering the extent of the North Dakota long-arm statute, the Eighth Circuit instructs this Court to first determine whether a forum state's long-arm statute confers jurisdiction over a non-resident defendant. *See Austad*, 823 F.2d 223, 225 (8th Cir.1987). In *Hust v. Northern Log, Inc.*, the North Dakota Supreme Court has defined the scope of Rule 4 "to encompass the exercise of personal jurisdiction by the state courts to the fullest extent permitted by due process." *Id.*, 297 N.W.2d 429, 431 (N.D.1980). *Hust* also stated "that each question or personal jurisdiction must be decided on a case-by-case basis depending on the particular facts and circumstances of each case." *Id.* By so extending the examination of personal jurisdiction to the outer limits of due process, the two-part test collapses into an examination of due process alone; if the jurisdiction fits within the concepts of due process and fair play, it also falls within the statute. *See Austad*, 823 F.2d 223, 225 (8th Cir.1987). The examination will continue on these grounds.

B) Due Process Considerations

To assert personal jurisdiction over a non-resident defendant under the Constitution, courts must ensure that " 'traditional notions of fair play and substantial justice' " are not offended. *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir.1987) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Issues of what constitutes personal jurisdiction are today often heatedly debated by courts. In its most recent examination of the subject, the Supreme Court split sharply in deciding whether a court could exercise jurisdiction over a foreign supplier. *See Asahi Metal*

*Industry Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1986). The Eighth Circuit Court of Appeals is regarded by some as drawing one of the more narrow constrictions of personal jurisdiction. *See id.* at 118 n. 2, 107 S.Ct. at 1036 n. 2 (Justice Brennan concurring). In deciding matters of personal jurisdiction, the Eighth Circuit has indicated a five-part test shall be used for measuring minimum contacts. This test will control this Court's decision.

2) The Eighth Circuit Test

The Eighth Circuit has indicated that five factors should be used to measure minimum contacts. *See Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987). These include:

1) The nature and quality of the contacts with the forum state;

2) The quantity of the contacts with the forum state;

3) The relation of the cause of action to the contacts;

4) The interest of the forum state in providing a forum for its residents; and

5) The convenience of the parties.

*Id.* The Eighth Circuit has advised that this test is not to be mechanically applied, but to take into consideration the facts of each case. *Id.* In making such an application, the first three factors are of primary consideration, while the last two factors are only of secondary importance. *Id.*

Before making any application of these factors, it is helpful to examine how the Eighth Circuit has applied them in the past. In *Austad*, a South Dakota corporation sought to have the trial court exert personal jurisdiction over a New York law firm. *Id.* at 224. The South Dakota corporation had engaged the law firm to handle a patent case for it. *Id.* The law firm sent an associate and a law clerk to South Dakota for three days to review and copy documents and to gather information necessary to answer interrogatories. *Id.* The law firm neither advertised nor had an office in South Dakota.

The Eighth Circuit held that the trial court properly dismissed the suit against the law firm for want of personal jurisdiction. *Id.* at 226. Since the law firm never actively solicited the South Dakota corporation as its client, the Eighth Circuit reasoned, its only contacts with South Dakota had been to represent one of its residents in litigation wholly outside South Dakota. *Id.* As such, the law firm did not "purposefully avail itself of the benefits and protections of the laws of South Dakota ... [and accordingly] did not have minimum contacts with South Dakota and thus was not subject to suit in South Dakota." *Id.* at 227.

Applying *Austad* to the present case, this Court must dismiss the case against LAQ for lack of personal jurisdiction. The Eighth Circuit test was designed to protect non-residents from litigation in unforeseeable forums. *Austad* held that the key to asserting personal jurisdiction is the quantity and the quality of the contacts between the defendant and the forum state. *Id.* at 226. In the present case, such contacts are almost non-existent. This Court is aware that other Circuits handle the matter of personal jurisdiction differently. *See e.g., Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383 (5th Cir.1989)(granting personal jurisdiction over a foreign asbestos producer). This Court has read with interest the well-reasoned opinion of Judge Graff in *Sackman v. A.P.I., Inc.*, Civil No. 41507 (Dist.Ct.N.D. Oct. 31, 1989). In his opinion, Judge Graff accepted the reasoning of the Fifth Circuit and allowed the assertion of personal jurisdiction in asbestos cases. *See id.* at 5. This Court agrees that the Fifth Circuit's reasoning that concludes the plaintiff's asserted asbestosis injury and personal injury lawsuit in North Dakota are consequences which were reasonably foreseeable to defendant LAQ when it sold asbestos nationally. This Court also believes the Supreme Court will ultimately accept the Fifth Circuit's treatment of personal jurisdiction in asbestos cases, and that such a decision would fit within the parameters of *Asahi Metal Industry Co. v. Superior Court. See id.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1986). Since this Court is bound by the Eighth Circuit's views, how-

ever, the fact that LAQ never shipped or sold any products directly to North Dakota is controlling. The Eighth Circuit has rejected the stream-of-commerce theory of jurisdiction, and LAQ cannot be found to have consented to jurisdiction by its acts. *See Wines v. Lake Havasu Boat Mfg., Inc.,* 846 F.2d 40, 43 (8th Cir.1988).

## CONCLUSION

Personal jurisdiction is governed by considerations of competing notions of fairness. On the one hand, plaintiffs and states seek a forum where the cause of their alleged injuries may be determined. On the other hand, defendants do not want to be brought into far-off courtrooms where they could not foresee being sued. In the present case, the Eighth Circuit test dictates that personal jurisdiction cannot be asserted over those without significant contacts with the forum state.

IT IS THEREFORE ORDERED:

1) THAT LAQ'S MOTION REQUESTING THE COURT "DISMISS PLAINTIFF'S COMPLAINTS AS TO IT ON THE GROUNDS THAT THIS COURT LACKS JURISDICTION OVER ITS CORPORATE PERSON" IS GRANTED.

2) THAT LAQ'S REQUEST FOR ORAL ARGUMENT ON THE MATTER OF DISMISSAL IS DENIED.