**BELL PAPER BOX, INC., Appellant,**

v.

**U.S. KIDS, INC., Appellee.**

**No. 93–2003.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1993.

Decided April 25, 1994.

---

Edward J. Lehay, Sioux Falls, SD, argued, for appellant.

Terry N. Prendergast, Sioux Falls, SD, argued, for appellee.

Before WOLLMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Bell Paper Box, Inc., a South Dakota corporation, manufactured several hundred thousand portfolios and envelopes to the specifications of U.S. Kids, Inc., a Michigan corporation, for delivery to U.S. Kids' Minnesota packager. When U.S. Kids paid slightly less than half of the contract price, Bell sued in South Dakota state court. U.S. Kids removed the case to federal court and moved to dismiss for lack of personal jurisdiction. The district court granted that motion, Bell appeals, and we reverse.

I

The crucial facts in this case are those pertaining to U.S. Kids' contacts with

the forum state, South Dakota. All such contacts appear to have been made solely in the advancement of the contract at issue, so we shall simply provide a chronological narration. As we are reviewing a pretrial dismissal, we shall resolve all factual disputes in Bell's favor. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991).

■ At the prompting of U.S. Kids' Minnesota packager, with whom Bell already had done business, Bell approached U.S. Kids about manufacturing portfolios and portfolio displays. U.S. Kids requested a price quotation, which Bell provided; Bell checked into U.S. Kids' credit history; and they were off and running. Correspondence occurred both by fax machine and through the mails, with the employees of each company remaining, at least initially, in their respective states.

The printed folding cartons were to be produced to the specifications of U.S. Kids. Of most significance was the printing on the cartons, which required Bell to create printing plates from camera-ready films submitted by U.S. Kids. Ciesa, Inc., also a Michigan corporation, submitted the camera-ready film on U.S. Kids' behalf, and worked with Bell's employees in assuring the adequacy of the final product. The president of U.S. Kids, Richard Fine, approved samples or proofs of each of the items to be manufactured, including the tattoo envelopes requested by U.S. Kids in its second order from Bell.

As production of the tattoo envelopes began, Lauren Ciesa, president of Ciesa, Inc., visited Bell's South Dakota factory and approved the initial production sheets. The final product was shipped to the Minnesota packager "F.O.B. Sioux Falls, South Dakota," whereupon U.S. Kids threatened to reject the entirety of both orders. Several Bell employees traveled to Michigan to resolve the problem, where they met with Fine and Ciesa. They appeared to have resolved the dispute, Bell provided certain credits against the amount owed by U.S. Kids, and U.S. Kids eventually made three payments that totaled approximately half of the amount owed.

No employee of U.S. Kids visited South Dakota regarding this transaction, nor has U.S. Kids conducted any business in South Dakota other than its business with Bell.

## II

■ To survive a motion to dismiss for lack of personal jurisdiction, the nonmoving party "need only make a prima facie showing of jurisdiction," and our review of the district court's determination whether the nonmovant has carried its burden is plenary. *Dakota*, 946 F.2d at 1387. "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir.1991). These issues are often analyzed independently, *see, e.g., Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 312 (8th Cir.1982), but when a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the due process clause, as South Dakota has, *see Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225 (8th Cir.1987), the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir.1991).

■ The due process clause requires that there be "minimum contacts" between the nonresident defendant and the forum state before the latter may exercise jurisdiction over the former. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's "reasonable anticipation," there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws.

*Soo Line,* 950 F.2d at 528–29 (citations and internal quotation marks omitted).

In *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338, 1340 (8th Cir. 1983), this court set forth a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. The first three factors are of primary importance. *Austad,* 823 F.2d at 226.

Following the Supreme Court's lead in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984), this court has elaborated on the third factor (the relationship of the cause of action to the contacts), distinguishing between specific jurisdiction and general jurisdiction. *See Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1392 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 63, 126 L.Ed.2d 32 (1993); *Morris,* 923 F.2d at 1280–81. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state," while "[g]eneral jurisdiction ... refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Sondergard,* 985 F.2d at 1392.

The only contacts between U.S. Kids and South Dakota alleged in this case are related to the dispute that resulted in this suit being brought, and it is fair to say that those contacts are insufficient to subject U.S. Kids to general jurisdiction in South Dakota.

They may, however, be sufficient to subject the defendant to jurisdiction for this cause of action.

In finding that it was without jurisdiction over U.S. Kids, the district court looked primarily to this court's *Austad* decision. There we held that the defendant, the New York law firm of Pennie & Edmonds, was not subject to specific jurisdiction in South Dakota. The firm's only contacts with the state were a three-day visit by an associate and a law clerk. *Austad,* 823 F.2d at 226. The firm had also corresponded with the plaintiff in South Dakota via telephone, courier, and U.S. post. *Id.* The firm had not solicited the plaintiff for its business, and had in fact been hired by a similarly situated New York corporation to represent itself, Austad, and four others. *Id.* Most importantly, in our view, the subject matter of the dispute, litigation in which Austad was a defendant, occurred not in South Dakota, but in Maryland. *Id.* We held these contacts insufficient to support jurisdiction. *Id.* at 227.

■ *Austad* is distinguishable from the case before us, however, in several respects. The controlling distinction is that the subject matter of this dispute occurred entirely within the forum state. Not only did a representative of U.S. Kids visit South Dakota, but the contract was performed in its entirety in South Dakota as well. The portfolios and envelopes were produced in South Dakota, leading to the necessity of Ciesa's visit to South Dakota to inspect the initial run to see that it was satisfactory.[1] The final product was shipped "F.O.B. Sioux Falls, South Dakota," which, as Judge Posner has indicated in a similar context, "means that the seller was contractually obligated to make delivery in [Sioux Falls], not elsewhere." *Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772

---

1. U.S. Kids places great emphasis on Ciesa's affidavit in which he states that he traveled to South Dakota on his own and that he was not acting as an agent of U.S. Kids. The affidavit by Bell's president describes Ciesa as the agent of U.S. Kids, a fact to which U.S. Kids objects loudly. Regardless of the legal relationship between Ciesa and U.S. Kids, Ciesa was viewed by Bell as U.S. Kids' agent, and reasonably so. Ciesa did not have any independent business relationship with Bell, so his only reason for visiting Bell's South Dakota factory was to determine the quality of the materials being produced for U.S. Kids. The Supreme Court has held that "when commercial activities are carried on in behalf of an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a primary participant in the enterprise and has acted purposefully in directing those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479 n. 22, 105 S.Ct. 2174, 2186 n. 22, 85 L.Ed.2d 528 (1985) (citations, internal quotation marks, and alterations omitted). We believe that this is one such occasion.

F.2d 1358, 1365 (7th Cir.1985) (citing White & Summers, *Handbook of the Law Under the Uniform Commercial Code* 107 (2d ed. 1980)).[2]

The physical contacts of U.S. Kids with South Dakota are admittedly slight, just as they were in *Papachristou v. Turbines, Inc.,* 902 F.2d 685 (8th Cir.1990) (en banc) (upholding specific jurisdiction when the defendant made a single visit to the forum state and the contract was performed entirely within the forum state), but the minimum contacts required by due process need not include physical presence at all. The Supreme Court instructs that "[j]urisdiction ... may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis in original). All that is required is that a commercial actor purposefully direct its efforts toward residents of the forum state, as we believe U.S. Kids has done. Ciesa's visit to South Dakota; the correspondence between U.S. Kids and Bell, including the transmission of camera-ready artwork necessary for the production of the portfolios and envelopes; and the performance of the contract (including delivery) entirely within the state of South Dakota were not random, fortuitous, or attenuated contacts, *see id.* at 475, 105 S.Ct. at 2183, such that jurisdiction would be inappropriate. Rather, U.S. Kids specifically sought the benefits and protection of South Dakota both in the "police and fire protection and perhaps other services for the facilities at which the buyer took possession" and "for the visit of the buyer's agent to inspect the goods" as production was beginning. *Afram Export,* 772 F.2d at 1364.

U.S. Kids places some emphasis on the distinction between its contacts with South Dakota and Bell's contacts with Michigan. It is true that several Bell representatives visited Michigan in an attempt to resolve this dispute, but that fact is of no consequence to our determination of whether U.S. Kids has sufficient contacts with South Dakota to support jurisdiction over this suit. Should U.S. Kids desire to bring suit against Bell in Michigan, such facts would be relevant, and perhaps they are relevant to the convenience of the parties, the fifth (and arguably least important) factor in the *Land–O–Nod* test. In this case, it is no more inconvenient for U.S. Kids to be haled into court in South Dakota than it would be for Bell to be haled into court in Michigan. *See Papachristou,* 902 F.2d at 686–87.

III

In closing we note, as has the Supreme Court, that the determination of whether minimum contacts exist "is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. California Super. Ct.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) (quoting *Estin v. Estin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561 (1948)); *see also Helicopteros,* 466 U.S. at 419, 104 S.Ct. at 1874 (Brennan, J., dissenting). Nonetheless, we believe that the district court erred in finding that it lacked jurisdiction over U.S. Kids for purposes of this litigation. U.S. Kids has minimal contacts with South Dakota, but those contacts are sufficient to confer jurisdiction over this suit. We therefore re-

---

**2.** This court has previously stated, as an alternative holding, that the delivery term in a contract could not create sufficient contacts to uphold jurisdiction. *Scullin Steel,* 676 F.2d at 313. Standing alone, this is certainly the case, because the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *see also Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185 (contract with out-of-state party alone insufficient); *Mountaire Feeds, Inc. v. Agro Impex, S.A.,* 677 F.2d 651, 655 (8th Cir.1982) (plaintiff's unilateral performance of contract in forum state insufficient). Such delivery terms are not irrelevant to a finding of personal jurisdiction, however, as this court indicated en banc in *Papachristou v. Turbines, Inc.,* 902 F.2d 685, 686 (8th Cir.1990) (en banc). *See also Afram Export,* 772 F.2d at 1364 (distinguishing *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.,* 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), in which the Seventh Circuit held that delivery alone does not suffice, and holding that jurisdiction is proper "if there are other contacts with the seller's state besides delivery").

verse and remand this matter for further proceedings consistent with this opinion.