**NEBRASKA BEEF LIMITED,**
Plaintiff

v.

**KBK FINANCIAL, INC., Defendant.**

No. 1:03–CV–90029.

United States District Court,
S.D. Iowa,
Western Division.

Oct. 30, 2003.

William M. Lamson, Jr., Sean A. Minahan, Brian J. Brislen, Lamson, Dugan & Murray, LLP, Omaha, NE, for Plaintiff.

James P. Waldron, Gross & Welch, Omaha, NE, G. William Smits, Gross &

Welch, PC, Council Bluffs, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff, Nebraska Beef Limited ("Nebraska Beef"), a Nebraska company, brings this action against Defendant, KBK Financial, Inc. ("KBK"), a Delaware corporation with its principal place of business in Fort Worth, Texas, under the Court's diversity jurisdiction and states two causes of action alleging that KBK misappropriated funds belonging to Nebraska Beef. Before the Court is Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over the person, and Rule 12(b)(3) for improper venue. The parties have briefed the issues, and the Court heard oral argument from both sides during a September 17, 2003 hearing. The matter is fully submitted. After careful consideration, the Court concludes that it lacks personal jurisdiction as KBK does not have sufficient contacts with the State of Iowa. As explained below, Defendant's Motion to Dismiss is, therefore, **granted.**

## I. BACKGROUND

KBK Financial is a Delaware corporation that provides its customers with working capital and asset-based financing along with other financial products. From its inception in 1962, and until 1994, KBK was incorporated as a Texas corporation. The company's principal place of business remains in Fort Worth, Texas. KBK also has satellite offices in Houston, Texas; St. Louis, Missouri; and Pasadena, California. KBK has no office, place of business, or employees in the State of Iowa. Defendant is not registered as a foreign corporation in Iowa, and KBK pays no taxes in the State.

In April 1998, KBK entered into a contractual agreement with Red Oak Farms, Inc. ("Red Oak"), an Iowa corporation, by executing an Account Transfer and Purchase Agreement as well as a collateralized inventory loan. Under the agreements, KBK was entitled to purchase Red Oak submitted invoices and related accounts receivable deemed creditworthy by KBK, and Red Oak was allowed to request a loan of up to $1,500,000, secured by Red Oak's inventory. As the contract between Red Oak and KBK involved collateral in Iowa, KBK perfected its security interest by filing Uniform Commercial Code financing statements with the State.

Negotiations for the agreements between Red Oak and KBK took place in Fort Worth, Texas, and Red Oak, Iowa over the course of two months. After executing the agreement, KBK employee agents contacted Red Oak personnel in Iowa often during the course of business between the two companies. As well, at least three KBK employees visited Red Oak in Iowa to conduct business, and other KBK agents conducted on-site audits of Red Oak's operations as allowed by the agreements. Under the terms of the Account Transfer and Purchase Agreement, KBK and Red Oak agreed that the contract was performable in Texas, and the contract includes a choice of venue, law, and jurisdiction clause limiting all three to Tarrant County, Texas.

Over a forty-two month period, KBK purchased over seventy-one million dollars worth of Red Oak accounts receivable. Purchases were made in part via electronic transfers of money from KBK to Red Oak's bank account in Iowa. Pursuant to the terms of the agreement, Red Oak held any funds due to KBK but mistakenly sent to Red Oak in trust in the State of Iowa, then immediately routed these funds to KBK in Fort Worth, Texas.

Plaintiff, Nebraska Beef, is a Nebraska limited partnership with its principle place of business in Omaha, Nebraska. In October of 2000, Nebraska Beef entered into an agreement with Red Oak[1] whereby Red Oak agreed to purchase from Nebraska Beef, and Nebraska Beef agreed to sell, certain meat products at an agreed upon price. In addition to the sales agreement, Red Oak and Nebraska Beef entered into a security agreement under which Plaintiff extended credit to Red Oak. Plaintiff alleges that Red Oak was, at all material times since executing the sales and security agreements, indebted to Nebraska Beef, and that Red Oak was in default of its obligations under the agreements.

Plaintiff alleges that from October 10, 2000 through at least December 11, 2000, various customers of Red Oak erroneously sent funds in the amount of $325,439.20 to KBK. Nebraska Beef claims that these funds were proceeds of its collateral pursuant to the sales and security agreements between Nebraska Beef and Red Oak, and, therefore, subject to Nebraska Beef's perfected security interest. After KBK refused to remit the amount demanded by Plaintiff, Nebraska Beef filed the present lawsuit alleging common law claims of conversion and tortious interference with contract. KBK filed a motion to dismiss for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2), and improper venue under 12(b)(3).

## II. LEGAL STANDARD FOR PERSONAL JURISDICTION

The plaintiff bears the ultimate burden of proving personal jurisdiction over the defendant. *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988). Jurisdiction, however, need not be proved by a preponderance of the evidence until trial or until an evidentiary hearing is held. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir.1991). To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a *prima facie* showing of jurisdiction. *Id.*

Determining whether the Court may properly exercise personal jurisdiction over a foreign corporation involves a two-step analysis. *Id.* at 1387–88. First, the exercise of jurisdiction must be appropriate under the relevant State long-arm statute. *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir.2003) (citing *Dakota*, 946 F.2d at 1387). Second, the Court examines "whether the exercise of personal jurisdiction comports with the requirements of due process." *Id.*

The relevant long-arm statute in this case, Iowa Rule of Civil Procedure 1.306 (formerly Rule 56.2) permits jurisdiction to the fullest constitutional extent. *See Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980). As a result, the personal jurisdiction inquiry "collapses into the single question of whether the exercise of personal jurisdiction comports with due process." *Silent Drive, Inc. v. Strong Indus., Inc.*, 2002 WL 1712329, at *4 (N.D.Iowa 2002) *rev'd on other grounds*, 326 F.3d 1194 (Fed.Cir.2003); *see also Hicklin Eng'g Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (per curiam) (because personal jurisdiction in Iowa is coterminous with the constitutional reach of due process, the two level inquiry collapses into one).

"The Due Process Clause establishes the parameters of a state's power to assert personal jurisdiction over a nonresident defendant." *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir.2000) (citing *Helicopteros Nacionales de Colombia, S.A. v.*

---

1. Nebraska Beef contracted with both Red Oak Farms, Inc., and Red Oak Hereford Farms, Inc. of Nevada.

*Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Due process mandates that jurisdiction be exercised only if the defendant has sufficient "minimum contacts" with the forum state, such that summoning the nonresident defendant to the forum state does not offend " 'traditional notions of fair play and substantial justice.' " *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Due process requirements safeguard important liberty interests by ensuring that a defendant is not subject to binding judgments in a forum in which he had not established any meaningful contacts, ties, or relations, and by providing fair warning to defendants about the geographic areas in which their conduct could render them liable to suit. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* (citing *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154). "[I]t is essential in each case that there is some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

Personal jurisdiction may be established over a nonresident defendant through either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). For general jurisdiction to attach, a defendant's contacts with the forum must be "continuous and systematic." *Id.;* Specific jurisdiction arises if the defendant "has purposefully directed his activities at residents of the forum and the litigation results from al-

leged injuries that arise out of or relate to those activities." *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174.

To determine whether a nonresident defendant has sufficient minimum contacts with the forum state for the Court to exercise either general or specific personal jurisdiction, the Eighth Circuit has developed a five-factor test. *Stanton,* 340 F.3d at 694 (citing *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir. 1987)). Under this test, the Court must consider: "(1) the nature and quality of contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Id.* Of the five factors, "the first three factors are of primary importance, and the last two are 'secondary factors.' " *Id.*

## III. DISCUSSION

### A. Nature, Quality, and Quantity of KBK's Contacts with the Forum

█ Under the first two factors of the Eighth Circuit's test, the Court examines the nature, quality, and quantity of KBK's contacts with the forum state. In the general business sense, KBK's contacts with Iowa are few. KBK does not own or operate any facilities or maintain any offices in Iowa, has no agent, representative, or employees in Iowa, and maintains no bank accounts in the state. As well, KBK has never been registered to conduct business in Iowa, and Defendant has never paid Iowa taxes. Rather, Defendant's contacts with Iowa are limited and specifically related to KBK's contractual relationship with Red Oak. During the negotiation and performance of this agreement, KBK's contacts with Iowa included: visits from KBK employees; email and telephone calls from KBK to Red Oak; the filing of a

financing statement with the State; and the transfer of over seventy-one million dollars from Texas to Iowa that KBK used to purchase Red Oak accounts receivable. All elements of KBK's performance under the contract took place outside the State.

Plaintiff contends that KBK's contacts with the State are sufficient in nature, quality, and quantity for the Court to exercise jurisdiction. In support of its argument, Plaintiff relies on *Pioneer Ins. Co. v. Gelt,* 558 F.2d 1303 (8th Cir.1977). In that case, the court found that jurisdiction over a nonresident defendant was proper in Nebraska where a $90,000 loan was payable in Nebraska and the loan was part of "an over-all transaction that was designed to affect, for better or for worse, a holding company, the business of which was centered in Nebraska." *Id.* at 1310. Plaintiff contends that here, as in *Pioneer,* the agreement between KBK and Red Oak was for the benefit of an Iowa company, thus subjecting KBK to personal jurisdiction in Iowa. The Court disagrees.

In *Pioneer,* the court explained:

We are not prepared to say that every transaction involving the making of a loan by a lender in a forum state to a citizen or resident of some other state subjects the borrower to the *in personam* jurisdiction of the courts of the forum state merely because the loan is to be repaid in that state or because money is transmitted out of that state to the borrower. If in connection with a particular loan sufficient minimum contacts between the borrower and the forum state are developed to satisfy the requirements of due process, the borrower may be subjected to the jurisdiction of the forum under a local long-arm statute, otherwise not. As indicated, each case must be decided in the light of its own facts and circumstances, and it appears to us that a number of factors are to be considered, and that they are not

necessarily limited to the physical contacts between the borrower and the forum state but include such factors as the nature, size and purpose of the loan, and perhaps other factors as well.

*Pioneer Ins. Co.,* 558 F.2d at 1309–10.

In *Pioneer,* the nonresident defendant was part of a joint venture with the Nebraska holding company that was central to the transaction, and the nonresident defendant's partner in the venture was a Nebraska resident who acted as the agent of both parties. *Id.* As well, the lender in *Pioneer* was a Nebraska company, so the State had an interest in providing a forum for its residents to recover on the note. Here, KBK has no Iowa contacts other than its dealings with Red Oak, and KBK's interest in Red Oak is limited to the contractual agreement. Unlike in *Pioneer,* KBK is not simply the out of state component of a larger enterprise located in Iowa. As such, the Court finds Plaintiff's reliance on *Pioneer* unpersuasive.

When considering only the nature, quality, and quantity of KBK's contacts with the forum, the question is close. The significance of the large amount involved in KBK's purchase of an Iowa company's accounts receivable over the course of three and a half years is undeniable, but with no other presence in the forum, Defendant lacks the continuous and systematic contacts necessary for the Court to assert general jurisdiction. The question then is whether Plaintiff's causes of action relate to Defendant's contacts with Iowa so as to warrant the exercise of specific jurisdiction.

### B. Relation of Cause of Action to Contacts

■ The Eighth Circuit has elaborated on the third factor of the test "to distinguish between specific and general jurisdiction." *Burlington Indus., Inc. v. Ma-*

*ples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir.1996) (citations omitted). As KBK lacks sufficient contacts with Iowa for the Court to assert general jurisdiction, the Court must determine if an exercise of specific jurisdiction is warranted. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." *Id.* at 1103. "Where specific personal jurisdiction over a nonresident defendant is asserted, due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Id.*

The question then is whether KBK purposely directed its activities at forum residents and whether Nebraska Beef's claims arise out of or relate to KBK's contacts with Iowa. To answer these questions, the Court looks at the nature of Plaintiff's claims. Plaintiff's Complaint alleges two common law causes of action for conversion and for tortious interference with Plaintiff's contract with Red Oak. Based on Plaintiff's allegations, the crux of the dispute is that Red Oak funds that should have gone to Nebraska Beef were erroneously sent to KBK, and KBK refuses to give the money back.

Both Nebraska Beef and KBK are creditors of Red Oak, and both parties claim an interest in Red Oak's business proceeds. As well, both parties had a contractual arrangement with Red Oak. KBK's contract related to the purchase of Red Oak's accounts receivables and Nebraska Beef contracted with Red Oak to sell meat products. Plaintiff's claims, however, are not related to Red Oak's accounts receivable or the sale of meat products. Conversion is the unauthorized assumption and exercise of ownership over the possessions of another. If, as Plaintiff alleges, KBK is in wrongful possession of Plaintiff's funds, all of KBK's actions occurred in Texas.

The funds were received in Texas, and KBK continues to hold the funds in Texas. As well, any interference with Nebraska Beef's contract with Red Oak occurred in Texas. Whether KBK is in wrongful possession of Plaintiff's money and whether KBK interfered with Plaintiff's contract with Red Oak is unrelated to KBK's contacts with the forum state. Restated, KBK did not purposely direct any activities at Iowa residents that resulted in the present litigation. Iowa is simply the common ground for these two nonresident parties because of their relationships with Red Oak. As such, the Court finds that the relationship between Defendant's contacts with the forum and Plaintiff's claims is tangential at best. The Court, therefore, finds that it cannot exercise either general or specific jurisdiction over KBK.

### C. Iowa's Interest in Providing Forum & Convenience of the Parties

The final two factors further weigh against the exercise of personal jurisdiction over KBK. This is a dispute between a Texas company and a Nebraska company. As neither party is an Iowa resident, Iowa has no interest in providing a forum for this litigation. As well, this forum is convenient for neither party. Accordingly, Defendant's Motion to Dismiss for lack of personal jurisdiction is granted.

### IV. ORDER

Defendant's Motion to Dismiss for lack of personal jurisdiction is granted. As the Court finds that it cannot assert jurisdiction over Defendant, the Court need not address Defendant's improper venue challenge. This case is hereby dismissed without prejudice.

IT IS SO ORDERED.