UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 95-1501

ARTHUR F. SAWTELLE, ETC., ET AL.,

Plaintiffs, Appellants,

v.

GEORGE E. FARRELL, ET AL.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge] 



Before

Selya and Stahl, Circuit Judges, 

and Gorton,* District Judge. 



Stanley M. Brown, with whom Mark A. Abramson and Abramson, 
Reis, Brown & Dugan were on brief for appellants. 
Joseph M. Kerrigan, with whom Timothy G. Kerrigan and 
Hamblett & Kerrigan, P.A. were on brief for appellees George E. 
Farrell and Speiser, Krause, Madole & Lear; Joel S. Perwin with 
whom Paul R. Kfoury and Kfoury & Elliott, P.A. were on brief for 
appellees Michael S. Olin and Podhurst, Orseck, Josefsberg,
Eaton, Meadow, Olin & Perwin, P.A.



December 5, 1995

 

* Of the District of Massachusetts, sitting by designation.

GORTON, District Judge. New Hampshire residents, GORTON, District Judge. 

Arthur and Judith Sawtelle (the "Sawtelles"), filed a legal

malpractice action in the United States District Court for the

District of New Hampshire to recover damages sustained as a

result of the alleged negligence of two attorneys and their law

firms with respect to litigation in the State of Florida. None

of the defendant-attorneys resides in New Hampshire, nor is any

one of them licensed to practice law there. The defendants moved

to dismiss the complaint for lack of specific in personam 

jurisdiction and the district court allowed the motion.

Plaintiffs filed the present appeal. We affirm.

I. Standard of Review I. Standard of Review

When reviewing a district court's ruling on a motion to

dismiss an action for failure to make a prima facie showing of

personal jurisdiction over a defendant, the appellate court draws

the facts from the pleadings and the parties' supplementary

filings, including affidavits, taking facts affirmatively alleged

by the plaintiff as true and viewing disputed facts in the light

most favorable to plaintiff. Ticketmaster-New York, Inc. v. 

Alioto, 26 F.3d 201, 203 (1st Cir. 1994); Kowalski v. Doherty, 

Wallace, Pillsbury & Murphy, 787 F.2d 7, 9 (1st Cir. 1986).1 In 

so doing, however, "we do not credit conclusory allegations or

 

1 Where the district court considers such a motion without
holding an evidentiary hearing, that court applies the prima
facie standard. United Elec. Workers v. 163 Pleasant Street 
Corp., 987 F.2d 39, 43 (1st Cir. 1993) ("Pleasant St. II"). 

-2-

draw farfetched inferences." Ticketmaster, 26 F.3d at 203. 

Because the district court makes a legal determination when

applying the prima facie standard, review by this Court is de 

novo (nondeferential). Boit v. Gar-Tec Products, Inc., 967 F.2d 

671, 675 (1st Cir. 1992).

II. Background II. Background

On May 21, 1989, the plaintiffs' son, Corey, was killed

when the aircraft he was flying, as a pilot under instruction,

was struck over the New Hampshire-Vermont border by an aircraft

from Florida. Several months later, the Sawtelles contacted an

attorney in New Hampshire to discuss the filing of a wrongful

death suit on behalf of their son's estate. The local attorney

referred plaintiffs to the California-based law firm of Speiser,

Krause, Madole & Cook, presumably because of the firm's

reputation for expertise in aircraft litigation.2

In March 1990, an attorney at the California firm,

which is not a party to this litigation, sent duplicate originals
 

2 In an affidavit dated January 20, 1995, Mr. Sawtelle stated
that plaintiffs obtained the name of the California firm when
they saw an advertisement for that firm in a magazine published
by the Aircraft Owners and Pilots Association ("AOPA"). The
affidavit is identical to an unsigned and undated draft affidavit
of Mr. Sawtelle except that the draft states that plaintiffs were
referred to the California firm by the New Hampshire attorney.
In defendants' counter-affidavit they deny ever having advertised
in any AOPA publication and, in support of their contention, they
submitted an affidavit of an advertising assistant at AOPA who
confirms that there were no advertisements for the law firm in
the AOPA magazine for the years 1988 through 1991. The district
court discounted the Sawtelles' claim that they retained the
California law firm on the basis of a magazine advertisement. We
do not disturb that determination.

-3-

of a retainer agreement, which had already been executed on

behalf of the firm, to the Sawtelles in New Hampshire. The

retainer agreement included a provision granting the firm a lien

upon any sum received in the plaintiffs' cause of action. The

Sawtelles signed the agreement and returned an executed original

to the California firm, which then transferred the case to its

Washington, D.C. (now Rosslyn, Virginia) affiliate, the defendant

Speiser, Krause, Madole & Lear ("the Speiser firm").

The case was assigned to defendant, George E. Farrell

("Farrell"), a Virginia resident and an attorney with the Speiser

firm. Mr. Farrell is not licensed to practice law in New

Hampshire. Although Farrell never personally met the plaintiffs,

he sent at least fifteen letters to them in New Hampshire and

spoke to them by telephone on numerous occasions during the

representation. Among the topics addressed in those

communications was Farrell's recommendation that Florida was the

most advantageous forum for the wrongful death claim.

To assist as local counsel in Florida, Farrell engaged

the Florida law firm, defendant, Podhurst, Orseck, Josefsberg,

Eaton, Meadow, Olin & Perwin, P.A. ("the Podhurst firm").

Defendant Michael S. Olin ("Olin"), a Florida resident and a

member of the Podhurst firm, handled the Sawtelles' claims. He

is licensed to practice law in Florida, but not in New Hampshire.

Like Farrell, Olin never personally met the Sawtelles but did

send numerous letters to them in New Hampshire and participated

-4-

in several telephone conversations with them concerning his legal

representation.

In March 1991, Attorney Olin filed a wrongful death

action on behalf of the Sawtelles in the Broward County Judicial

Circuit Court in Florida. The complaint for the estate was

signed on behalf of the Speiser firm and the Podhurst firm. In

July 1991, negotiations with the defendants in the underlying

wrongful death claim resulted in a settlement offer of $155,000.

By letter dated August 7, 1991, and in response to plaintiffs'

concerns regarding the sufficiency of the settlement, Attorney

Farrell told the Sawtelles that "[he] believe[ed] it [was] in

[their] best interest to accept the settlement." Plaintiffs

allege that Olin, too, advised them, by telephone, that the

settlement was in their best interest. The Sawtelles ultimately

accepted the settlement offer.

Olin later became concerned about the disbursement of

settlement funds to Corey Sawtelle's brother Jason, who was a

minor at the time. To determine his obligations under New

Hampshire law, Olin contacted an attorney in New Hampshire for

advice regarding the distribution of the funds. Having obtained

such advice, Attorney Olin finally disbursed the settlement funds

in December 1991.

The Sawtelles subsequently learned that: 1) the estate

of Ronald Brown, Corey's flight instructor who had also died in

the crash, had filed a wrongful death suit in Florida; 2) the

action had been consolidated with the case brought by Corey's

-5-

estate; and 3) the instructor's claim had been settled for

$500,000. That discovery prompted the Sawtelles to file the

present legal malpractice action against defendants in federal

district court in New Hampshire.

The Sawtelles' malpractice claims allege that the

defendants negligently negotiated an inadequate settlement of the

wrongful death claim of their son's estate. Among the alleged

shortcomings in defendants' performance were the failures: 1) to

take depositions; 2) to obtain an economist's projection of their

son's lost earning capacity; and 3) to consult liability experts

or engage in significant investigative efforts. The Sawtelles

further allege that defendants negligently directed settlement

advice into New Hampshire (by telephone and mail), causing them

to rely on that advice and thereby suffer economic loss in New

Hampshire. 

The defendants moved to dismiss for lack of personal

jurisdiction. The motion was granted by the district court on

April 28, 1995, and this appeal followed.

III. Analysis III. Analysis

When a court's jurisdiction is contested, the plaintiff

bears the burden of proving that jurisdiction lies in the forum

state. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 

189 (1936); Dalmau Rodr guez v. Hughes Aircraft Co., 781 F.2d 9, 

10 (1st Cir. 1986). In determining whether a non-resident

defendant is subject to its jurisdiction, a federal court

-6-

exercising diversity jurisdiction "is the functional equivalent

of a state court sitting in the forum state." Ticketmaster, 26 

F.3d at 204; see also General Contracting & Trading Co. v. 

Interpole, Inc. 940 F.2d 20, 23 n.4 (1st Cir. 1991). The court 

must, therefore, find sufficient contacts between the defendant

and the forum to satisfy both that state's long-arm statute and

the Fourteenth Amendment's Due Process clause. See Ticketmaster, 

26 F.3d at 204; United Electrical Workers v. 163 Pleasant St. 

Corp., 960 F.2d 1080, 1086 (1st Cir. 1992)("Pleasant St. I"); 

Hahn v. Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983).3 

We explore these requirements seriatim. 

A. The New Hampshire Long-Arm Statute A. The New Hampshire Long-Arm Statute

It is well established in diversity cases that "the

district court's personal jurisdiction over a nonresident

defendant is governed by the forum's long-arm statute." Goldman, 

Antonetti, Ferraiouli, Axtmayer & Hertell v. Medfit Int'l, Inc., 

982 F.2d 686, 690 (1st Cir. 1993)(quoting Pizarro v. Hoteles 

Concorde Int'l, C.A., 907 F.2d 1256, 1258 (1st Cir. 1990)). In 

the case at bar, the group of defendants includes two

individuals, a professional association and a partnership.
 

3 In Ticketmaster, we observed that the extent of the required 
jurisdictional showing by a plaintiff depends upon whether the
litigant is asserting jurisdiction over a defendant under a
theory of "general" or "specific" jurisdiction. 26 F.3d at 204
n.3; see also Donatelli v. National Hockey League, 893 F.2d 459, 
462-63 (1st Cir. 1990)(detailing differences). In the case at
hand, the Sawtelles' action turns on a theory of specific
jurisdiction (i.e., jurisdiction which a state may assert when a
claim arises directly out of forum-based activities. Id. at 462. 

-7-

Accordingly, we must consider the New Hampshire long-arm statutes

applicable to each of these defendants.

The New Hampshire long-arm statute applicable to the

individual defendants, Olin and Farrell, is N.H. Rev. Stat. Ann.

("RSA") 510:4, I (Supp. 1994), which permits the exercise of

personal jurisdiction over a defendant who "transacts any

business within [the] state" or "commits a tortious act within

[the] state." In Estabrook v. Wetmore, 129 N.H. 520, 523 (1987), 

the Supreme Court of New Hampshire interpreted the latter phrase

to include situations where a defendant's out-of-state activity

results in an injury within New Hampshire. The Sawtelles

exhaustively argue that their claims against the individual

defendants satisfy each of the possible bases for personal

jurisdiction. Not surprisingly, defendants disagree.

We need not dwell on this issue. The New Hampshire

long-arm statute applicable to individuals has been interpreted

to afford jurisdiction over foreign defendants "to the full

extent that the statutory language and due process will allow."

Phelps v. Kingston, 130 N.H. 166, 171 (1987). As recognized by 

the court below, when a state's long-arm statute is coextensive

with the outer limits of due process, the court's attention

properly turns to the issue of whether the exercise of personal

jurisdiction comports with federal constitutional standards. See 

Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 777 (5th Cir. 

1986), cert. denied, 481 U.S. 1015 (1987). 

-8-

We reach a similar conclusion with respect to the

professional association defendant. New Hampshire's long-arm

statute governing unregistered foreign corporations, such as the

Podhurst professional association, is RSA 293-A:15.10 (Supp.

1994). That statute includes no restriction upon the scope of

jurisdiction available under state law and thus authorizes

jurisdiction over such entities to the full extent permitted by

the federal Constitution. See McClary v. Erie Engine & Mfg. Co., 

856 F. Supp. 52, 55 (D.N.H. 1994)(because RSA 293-A:15.10 reaches

to the federal limit, the traditional two-part analysis for

personal jurisdiction "collapses into the single question of

whether the constitutional requirements of due process have been

met").

The appropriate treatment of the Speiser firm is less

clear. The New Hampshire long-arm statutes do not, by their

terms, apply to partnerships, and the case law does not discuss

any long-arm provision applicable to such entities. To address

that unresolved issue of state law, the Sawtelles turn for

guidance to RSA 305-A:6-8 (Supp. 1994), which relates to service

of process on a foreign partnership. Observing that service on a

foreign partnership is treated nearly identically to service on a

foreign corporation under RSA 293-A:15.10, plaintiffs argue that

partnerships are to be treated as corporations for determining

personal jurisdiction. If that is so, then, as in the individual

and corporate contexts discussed above, the scope of jurisdiction

-9-

over the Speiser firm partnership is commensurate with that

permitted under the Constitution.

We find it unnecessary to resolve this unsettled issue

of state law because a plaintiff seeking to establish

jurisdiction over a foreign defendant must satisfy the demands

not only of state law but also of the federal Constitution. When

confronted with a similar quandary in Ticketmaster, we chose to 

bypass the statutory phase of the jurisdictional inquiry because

the plaintiff's case could not pass constitutional muster. 26

F.3d at 206. We therefore assume, arguendo, that under New 

Hampshire law the scope of personal jurisdiction over the Speiser

firm partnership is, as in the case of the corporate defendant,

coextensive with the outer limits of due process.

B. The Due Process Clause B. The Due Process Clause

When embarking upon the fact-sensitive inquiry of

whether a forum may assert personal jurisdiction over a

defendant, the court's task is not a rote, mechanical exercise.

Indeed, "[d]ivining personal jurisdiction is 'more an art than a

science.'" Ticketmaster, 26 F.3d at 206 (quoting Donatelli, 893 

F.2d at 468 n.7). The Fourteenth Amendment's concern of

fundamental fairness is achieved by the central requirement that

certain "minimum contacts" exist between the defendant and the

forum state. International Shoe Co. v. State of Washington, 326 

U.S. 310, 316 (1945); Ticketmaster, 26 F.3d at 206. This Circuit 

-10-

utilizes a three-part analysis to determine if sufficient

contacts exist to exercise specific personal jurisdiction:

First, the claim underlying the litigation
must directly arise out of, or relate to, the
defendant's forum-state activities. Second,
the defendant's in-state contacts must
represent a purposeful availment of the
privilege of conducting activities in the
forum state, thereby invoking the benefits
and protections of that state's laws and
making the defendant's involuntary presence
before the state's courts foreseeable.
Third, the exercise of jurisdiction must, in
light of the Gestalt factors, be reasonable.

Pleasant St. I, 960 F.2d at 1089; see also Pritzker v. Yari, 42 

F.3d 53, 60-61 (1st Cir. 1994), cert. denied, U.S. , 115 

S. Ct. 1959 (1995); Ticketmaster, 26 F.3d at 206. Central to 

each step of the established analysis, therefore, are the

contacts which are attributable to each defendant in this case.4

1. Relatedness. 1. Relatedness.

Our first consideration under the tripartite framework

is whether the plaintiffs' claim arises out of, or relates to,

defendants' in-forum activities. Ticketmaster, 26 F.3d at 206. 

Although this requirement is "the least developed prong of the

due process inquiry," it serves the important function of

 

4 Under elemental principles of agency, the contacts of
Attorneys Olin and Farrell with New Hampshire are attributable to
the Podhurst and Speiser firm, respectively. See Pleasant St. I, 
960 F.2d at 1090 (contacts of corporation's agent can subject the
corporation to personal jurisdiction); Donatelli, 893 F.2d at 467 
(contacts of a partner committed in furtherance of partnership
business are imputed to the partnership).

-11-

focusing the court's attention on the nexus between a plaintiff's

claim and the defendant's contacts with the forum. Id.; see also 

Pleasant St. I, 960 F.2d at 1089. Relatively speaking, the 

relatedness test is a "flexible, relaxed standard," Pritzker, 42 

F.3d at 61, as suggested by the disjunctive nature of the

requirement. See Ticketmaster, 26 F.3d at 206.  

The relatedness requirement is not met merely because a

plaintiff's cause of action arose out of the general relationship

between the parties; rather, the action must directly arise out

of the specific contacts between the defendant and the forum

state. See, e.g., Fournier v. Best Western Treasure Island 

Resort, 962 F.2d 126, 127 (1st Cir. 1992)(where plaintiff had 

made vacation arrangements in Massachusetts but was injured out-

of-state, cause of action did not "arise from" the defendant

resort operator's contacts with Massachusetts within the meaning

of the state long-arm statute); Marino v. Hyatt Corp., 793 F.2d 

427 (1st Cir. 1986)(same); Pickens v. Hess, 573 F.2d 380, 386 

(6th Cir. 1978)(no personal jurisdiction over defendants under

state long-arm statute which extends to limits of due process

when "the cause of action between the parties did not arise from

any acts of the defendants in [the forum state]"); Bryant v. 

Weintraub, Genshlea, Hardy, Erich & Brown, 844 F. Supp. 640, 642 

(D. Or. 1994) (where Oregon resident sued California law firm for

failure to obtain service in California, the injury arose

directly from alleged malpractice in California and had no

connection to the firm's other Oregon contacts), aff'd, 42 F.3d 

-12-

1398 (9th Cir. 1994). We therefore must consider the contacts

between the defendants and the forum state viewed through the

prism of plaintiffs' legal malpractice claim.

Of the limited contacts between the defendants and New

Hampshire during their legal representation, few are relevant to

the Sawtelles' claim of legal malpractice and thus few assist

them in satisfying the relatedness element of the jurisdictional

inquiry. For the Virginia defendants, Attorney Farrell and the

Speiser firm, the relevant contact was the August 7, 1991 letter

mailed to the plaintiffs in New Hampshire, in which Farrell

stated that he believed it to be in the Sawtelles' best interests

to accept the $155,000 settlement offer. For the Florida

defendants, Attorney Olin and the Podhurst firm, the relevant

contact with the forum, for purposes of the Sawtelles'

malpractice claim, was Olin's telephone call to New Hampshire in

which he concurred in the settlement recommendation.

The transmission of information into New Hampshire by

way of telephone or mail is unquestionably a contact for purposes

of our analysis. See Burger King Corp. v. Rudzewicz, 471 U.S. 

462, 476 (1985). It would, however, be illogical to conclude

that those isolated recommendations constituted the negligent

conduct that caused the Florida injury and thus were in-forum

acts sufficient to establish specific personal jurisdiction in

New Hampshire.5 A review of all the allegedly negligent actions
 

5 The injury suffered by the Sawtelles as a result of the
alleged negligent activities--the loss of their right to an
adequate recovery on the wrongful death claim which had been

-13-

of the defendants preceding the injury indicates numerous non-

forum decisions reached by the defendants in Virginia and

Florida, but not in New Hampshire. It was the defendants'

investigation, in Florida and Virginia, which informed their

judgment about the amount and propriety of the proposed

settlement. In short, it was the aggregate of the defendants'

allegedly negligent acts and omissions which caused the Florida

injury, and the out-of-forum negligence was the effective cause.

See Ticketmaster, 26 F.3d at 207; Pleasant St. I, 960 F.2d at 

1089 (noting how causation principles inform the due process

analysis).

In its analysis of the relatedness requirement, the

district court relied upon Kowalski v. Doherty, Wallace, 

Pillsbury & Murphy, 787 F.2d 7 (1st Cir. 1986). In Kowalski, a 

New Hampshire resident filed suit in New Hampshire against a

Massachusetts law firm alleging that the firm had negligently

permitted the dismissal of a wrongful death suit pending in

Massachusetts. Id. at 8. Although the firm was aware of its 

client's New Hampshire residency at the time it filed the

wrongful death action, this Court affirmed the dismissal of the

malpractice action for lack of personal jurisdiction under the

New Hampshire long-arm statute. In so doing, we rejected the

plaintiff's contention that, because the "effects" of the firm's

 

filed in Florida--occurred in Florida when the state court
approved the recommended settlement and terminated the pending
lawsuit. See Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 
787 F.2d 7, 11 (1st Cir. 1986).

-14-

negligence were felt in New Hampshire, the law firm had caused an

injury there by conduct directed at that forum. See id. at 11. 

Instead, we observed that:

[the client's] injury occurred when the suit
was dismissed by the Massachusetts court.
The consequence of the dismissal is that
plaintiffs are barred from bringing a
wrongful death action in the Massachusetts
courts. The injury, if any, occurred in
Massachusetts.

Id.; see also Cote v. Wadel, 796 F.2d 981, 984 (7th Cir. 

1986)(where the negligence of a Michigan law firm resulted in a

Wisconsin plaintiff losing "a valuable property in Michigan

consisting of a cause of action against a doctor, . . . [t]he

handful of letters and phone calls" that passed between the

client and firm was not enough for personal jurisdiction over the

firm in Wisconsin).

The Sawtelles attempt to distinguish Kowalski and Cote 

by pointing out that, unlike the instant action, those cases

involved legal malpractice claims based upon the failure of

attorneys to comply with procedural rules, thereby causing the

loss of rights of their respective clients. In such cases, the

Sawtelles contend, the exercise of personal jurisdiction would

have been improper because the malpractice actions did not arise

out of the contacts between the attorneys and the forum states.

In contrast, the plaintiffs argue that their malpractice claim

satisfies the relatedness requirement because the defendants

directed negligent settlement advice into New Hampshire, thereby

-15-

causing plaintiffs harm in New Hampshire as a result of their

reliance upon such advice.

We are not convinced that the plaintiffs have

distinguished themselves from the plaintiff in Kowalski. It may 

be true that the defendants' alleged malpractice was not

consummated until they communicated their misconceived advice to

plaintiffs in New Hampshire by telephone and mail and the

plaintiffs' relied on the advice to their detriment. Ultimately,

however, the gravamen of the Sawtelles' claim is that they

suffered in New Hampshire the "effects" of the defendants'

negligence committed elsewhere. See Kowalski, 787 F.2d at 11. 

The communications sent into New Hampshire were ancillary to the

allegedly negligent non-forum activities, and because those

communications were the only relevant contacts with the forum for

purposes of the Sawtelles' malpractice claim, we conclude that

the plaintiffs' showing of relatedness should be characterized as

tenuous at best. It hangs, as it were, by a thread.

2. Purposeful Availment. 2. Purposeful Availment.

We next consider whether defendants' contacts with New

Hampshire represent a purposeful availment by defendants of the

privilege of conducting business in that State. The function of

the purposeful availment requirement is to assure that personal

jurisdiction is not premised solely upon a defendant's "random,

isolated, or fortuitous" contacts with the forum state. See 

Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984). Our 

-16-

focus is on whether a defendant has "engaged in any purposeful

activity related to the forum that would make the exercise of

jurisdiction fair, just, or reasonable." Rush v. Savchuk, 444 

U.S. 320, 329 (1980). In Ticketmaster, 26 F.3d at 207, this 

Court observed that the cornerstones upon which the concept of

purposeful availment rest are voluntariness and foreseeability. 

a. Voluntariness a. Voluntariness

The Sawtelles contend that the requisite voluntariness

is present because "in the context of attorney-client

relationships the act of knowingly agreeing to represent an out-

of-state client is plainly sufficient." Plaintiffs' Brief at 36.

Plaintiffs aim to bolster their argument by pointing to their law

firms' alleged promotion of their reputations beyond their

respective borders. We consider these arguments in turn.

At the time they agreed to provide legal advice and

representation to the plaintiffs, the defendants knew the

Sawtelles were residents of New Hampshire. Defendants' contacts

with New Hampshire, however, were limited to communicating with

the clients in their home state. The wrongful death litigation

was prosecuted in Florida, while other legal services were being

rendered in Florida and other places outside New Hampshire. A

review of the totality of the defendants' contacts with the forum

state leaves us gravely doubtful that the defendants purposefully

availed themselves of the benefits and protections of New

Hampshire law.

-17-

The Eighth Circuit case of Austad Co. v. Pennie & 

Edmonds, 823 F.2d 223 (8th Cir. 1987), is instructive on this 

requirement for personal jurisdiction. In Austad, a New York law 

firm represented a South Dakota client in patent litigation

pending in Maryland. The contacts between the firm and South

Dakota during the representation included numerous phone calls,

mailings, and a three-day factfinding visit to South Dakota by a

lawyer from the firm. See id. at 224-25. The client later sued 

the firm for malpractice in federal district court in South

Dakota. The Court of Appeals held that the defendant law firm's

contacts with the forum were insufficient to satisfy the

"purposeful availment" requirement, stating:

While we do not dispute [the client's] claim
that an attorney-client relationship existed
between [the parties], we do not believe that
[the firm] had sufficient contacts with South
Dakota to confer personal jurisdiction.

823 F.2d at 226. The Austad court thus deemed the firm's only 

"substantial connection" with the forum, its voluntary

representation of a South Dakota corporation in litigation

outside of South Dakota, as insufficient to support a finding of

purposeful availment. See id. at 227. 

In the case at bar, as in Austad, the contacts of the 

defendants with New Hampshire were limited, consisting primarily

of written and telephone communications with the clients in the

state where they happened to live. Compare Sher v. Johnson, 911 

F.2d 1357, 1362-63 (9th Cir. 1990) (contacts between client and

-18-

non-resident law firm consisting of telephone calls, mailings,

and three visits by lawyer to forum state to visit client were

not, by themselves, sufficient connections with forum to

establish purposeful availment) with Trinity Industries, Inc. v. 

Myers & Associates, Ltd., 41 F.3d 229, 230-31 (5th Cir. 

1995)(jurisdiction over an Illinois law firm sued by a Texas

client for malpractice was upheld because the firm had

purposefully availed itself of privileges of doing business in

Texas by extended representation of the client in at least 40

matters, including a court appearance in the forum).

The mere existence of an attorney-client relationship,

unaccompanied by other sufficient contacts with the forum, does

not confer personal jurisdiction over the non-resident in the

forum state; more is required. See Burger King, 471 U.S. at 479- 

80; Hanson v. Denckla, 357 U.S. 235, 253 (1958); Trinity 

Industries, 41 F.3d at 230 & n.6; Cote, 796 F.2d at 984 

("[p]ersonal jurisdiction over nonresidents...is a quid for a quo

that consists of the state's extending protection or other

services to the nonresident"). In this case, the defendant-

attorneys' only connection with New Hampshire was the Sawtelles'

residence there. See Trinity Industries, 41 F.3d at 231 n.8. 

The case on which the plaintiffs rely as "most like"

the instant action is Waterval v. District Court, 620 P.2d 5 

(Colo. 1980), cert. denied, 452 U.S. 960 (1981), in which the 

Colorado courts exercised jurisdiction over a Virginia attorney

who had rendered negligent financial services to a Colorado

-19-

resident. In Waterval, the attorney-client relationship arose 

when both parties were residents of Virginia and the attorney

established and oversaw for the client the administration of a

discretionary investment account in a Virginia bank. Id. at 7. 

After the client moved to Colorado, the attorney-client

relationship continued when the lawyer handled a real estate

transaction in connection with the sale of his client's house in

Virginia. He later dealt negligently, by telephone and

correspondence, with the client in Colorado with respect to a

recommended transfer and eventual liquidation of certain

investment account assets. Id.  

After determining that the defendant-attorney's

contacts satisfied the Colorado long-arm statute, the Waterval 

court held that the exercise of jurisdiction comported with

federal due process requirements. Id. at 7-8. With respect to 

the issue of purposeful availment, the court described several

contacts between the defendant and the forum state but, most

significantly, that defendant voluntarily: 

1) chose to continue an attorney-client
relationship which had originated in Virginia
even after the client had moved to Colorado,

2) engaged in contacts which were "personal
in character and resulted in a tangible and
monetary benefit to [himself]," and

3) acted in a way to impact directly upon the
legal and financial interests of a Colorado
resident.

Id. at 10. Because the cause of action stemmed, in part, from 

the adverse consequences of defendant's negligent legal and

-20-

financial counseling directed to a Colorado resident over a two-

year period, the court concluded that defendant could have

reasonably anticipated being held accountable in Colorado for

those activities. Id. 

The instant action is distinguishable. Whereas Mr.

Sawtelle initially contacted the Speiser firm which, in turn,

retained the Podhurst firm, the defendant-attorney in Waterval 

initiated contact and actively solicited, and negligently

handled, his client's investment business after the client had

moved to Colorado. Furthermore, the relationship between the

Sawtelles and the Speiser firm was not extended and was much less

pervasive than the relationship in Waterval. 

The Sawtelles next attempt to demonstrate the requisite

voluntariness by claiming that the defendants' efforts to

cultivate their images as "national" firms were deliberate,

significant activities within the forum sufficient to satisfy the

purposeful availment requirement. See Burger King, 471 U.S. at 

475-76; Keeton, 465 U.S. at 781. For example, the Sawtelles 

point to the Podhurst firm's listing in Martindale-Hubbell which

proudly reports of "serv[ing] clients and corporations throughout

the United States."6 As a result of those efforts, plaintiffs

contend, the defendants purposefully derived benefits from their

interstate activities.
 

6 Plaintiffs seek to fortify this argument by reference to the
Speiser firm's alleged advertisement in an AOPA publication
discussed in note 2, supra. For the reasons articulated therein, 
we choose to disregard the discounted allegation in our
consideration of purposeful availment.

-21-

This Court has previously declined to adopt the

"stream of commerce" theory of personal jurisdiction, a form of

which is thus advanced by the Sawtelles. See Boit v. Gar-Tec 

Products, Inc., 967 F.2d 671, 681-82 (1st Cir. 1992); Dalmau 

Rodr guez v. Hughes Aircraft Co., 781 F.2d 9, 15 (1st Cir. 1986). 

We are guided to this conclusion by the Supreme Court's rejection

of the claim that a commercial enterprise should be subject to

personal jurisdiction wherever its conduct foreseeably causes

injury, regardless of whether the defendant directed its conduct

toward the forum state. See Asahi Metal Indus. Co. v. Superior 

Court of California, 480 U.S. 102, 112 (1987) ("The placement of 

a product into the stream of commerce, without more, is not an

act of the defendant purposefully directed toward the forum

State"). 

The Podhurst firm's promotional activity falls

substantially short of sufficing to subject that firm to personal

jurisdiction in New Hampshire. First, the Florida firm became

involved in the subject representation not as the result of

affirmative efforts to promote business in New Hampshire, but

only after being requested by the Virginia firm to commence

litigation in Florida. More importantly, to treat the Podhurst

firm's general statement in Martindale-Hubbell as a sufficiently

direct "targeting" of New Hampshire would, in effect, embrace the

"stream of commerce" theory of personal jurisdiction which this

Court has already rejected. See Boit, 967 F.2d at 681-82; Dalmau 

Rodr guez, 781 F.2d at 15. 

-22-

b. Foreseeability b. Foreseeability

Bearing in mind the second pillar of the purposeful

availment requirement, we proceed to consider the Sawtelles'

contention that it was foreseeable that the defendants would be

haled into a New Hampshire court as a result of their legal

representation of New Hampshire residents. The enforcement of

personal jurisdiction over a non-resident defendant is

foreseeable when that defendant has established a continuing

obligation between itself and the forum state. See Burger King, 

471 U.S. at 476; Travelers Health Ass'n v. Virginia, 339 U.S. 

643, 648 (1950). Among the continuing obligations between the

defendants and the forum state relied upon by the Sawtelles are

1) the involvement of New Hampshire law in the distribution of

the settlement proceeds, and 2) the contract by which the Speiser

firm obtained a lien on any proceeds received in connection with

the plaintiffs' cause of action.

We are underwhelmed by the force of the plaintiffs'

argument. The requirements of New Hampshire law with respect to

the distribution of settlement proceeds procured from the Florida

litigation has no bearing upon the question of whether or not the

defendants purposefully availed themselves of that law. More

importantly, although the plaintiffs required the assistance of

New Hampshire counsel in order to distribute settlement proceeds

to their minor son, the defendant law firms themselves performed

no legal services in New Hampshire in that regard.

-23-

In support of their contention that the lien granted to

the Speiser firm by the retainer agreement constitutes purposeful

availment of the privileges and benefits of New Hampshire law,

the Sawtelles rely upon Sher v. Johnson, 911 F.2d 1357 (9th Cir. 

1990). Sher involved a legal malpractice action brought in 

California by a resident of that State who had hired a Florida

law firm to represent him in a criminal matter in Florida. The

Florida firm's contact with California included: 1) phone calls

and letters sent to the client; 2) three California visits with

the client by a member of the firm; and 3) execution of a deed of

trust whereby the law firm obtained a lien on the client's home

in California. Id. at 1360. 

In reversing the district court's dismissal of the

malpractice action for lack of personal jurisdiction, the Ninth

Circuit Court of Appeals found that the deed of trust tipped the

scale in favor of a finding of purposeful availment. See id. at 

1363. Although neither the written and telephonic communications

nor the California visits sufficed, by themselves, to establish

purposeful availment, the addition of the execution of the deed

of trust signified a sufficient invocation of the benefits and

protections of the laws of California to warrant the exercise of

jurisdiction. See id. at 1363-64. The Court reasoned that the 

security interest "contemplated [significant] future

consequences" in the forum-state, i.e., perfecting an interest in

real estate would require recording in California, while

obtaining and enforcing a judgment on the deed would require both

-24-

the application of the forum's law and court action in

California. Id. at 1363. 

The Sher decision is readily distinguishable from the 

case before us, however. While the deed of trust in Sher gave 

the Florida partnership a security interest in real property

located in California, the lien granted to the Speiser firm did

not encumber or affect title to any New Hampshire real estate.

The Speiser lien was a transitory obligation which traveled

wherever the Sawtelles or the holder of the proceeds might go.

Even without a lien, a contractual obligation to pay the Speiser

firm's fee existed, an obligation enforceable wherever the

Sawtelles were located. Unlike the Sher deed of trust, 

therefore, the Speiser lien required no entanglement with the law

of the forum state.

Consequently, the frailty of plaintiffs' showing at

this second stage of the personal jurisdiction analysis is even

more pronounced than the tenuous showing of relatedness,

discussed supra. This "thread" is frayed and tattered. The mere 

act of agreeing to represent (and then representing) an out-of-

state client, without more, does not suffice to demonstrate

voluntary purposeful availment of the benefits and protections of

the laws of the client's home state. Furthermore, the alleged

continuing obligation between the defendants and New Hampshire is

virtually non-existent. Ultimately, the weakness of plaintiffs'

arguments with respect to the first two stages of the personal

jurisdiction analysis provides insufficient support for their

-25-

appeal, even when stitched together with their argument as to the

final stage, to which we now turn.

3. The Gestalt Factors. 3. The Gestalt Factors.

A court's jurisdictional inquiry is not merely a

"mechanical exercise," Ticketmaster, 26 F.3d at 208, and concepts 

of reasonableness must illuminate the minimum contacts analysis.

See World-Wide Volkswagen Corp., 444 U.S. 286, 292 (1980); 

Pleasant St. I, 960 F.2d at 1088 ("[E]ven where purposefully 

generated contacts exist, courts must consider . . . other

factors which bear upon the fairness of subjecting [nonresidents]

to the authority of a foreign tribunal"). The Supreme Court has

identified five such considerations, which this Court has termed

the "gestalt factors": (1) the defendant's burden of appearing;

(2) the forum state's interest in adjudicating the dispute; (3)

the plaintiff's interest in obtaining convenient and effective

relief; (4) the judicial system's interest in obtaining the most

effective resolution of the controversy; and (5) the common

interests of all sovereigns in promoting substantive social

policies. See Burger King, 471 U.S. at 477. Although this part 

of the jurisdictional analysis has parameters which are not well

defined, we know it serves the purpose of assisting courts to

achieve substantial justice. See Pritzker, 42 F.3d at 63-64; 

Ticketmaster, 26 F.3d at 209. 

-26-

In Ticketmaster, this Court observed that the 

reasonableness stage of the jurisdictional analysis evokes a

sliding scale:

[T]he weaker the plaintiff's showings on the
first two prongs (relatedness and purposeful
availment), the less a defendant need show in
terms of unreasonableness to defeat
jurisdiction. The reverse is equally true:
an especially strong showing of
reasonableness may serve to fortify a
borderline showing of relatedness and
purposefulness.

26 F.3d at 210. Moreover, we note that a failure to demonstrate

the necessary minimum contacts eliminates the need even to reach

the issue of reasonableness: "[t]he [g]estalt factors come into

play only if the first two segments of the test for specific

jurisdiction have been fulfilled." Pleasant St. I, 960 F.2d at 

1091 n.11. We proceed to consider the gestalt factors, bearing

in mind the flimsy showings of relatedness and purposeful

availment made by the plaintiffs in this case.

a. The Defendants' Burden of Appearance a. The Defendants' Burden of Appearance

The extent of the burden on the defendants to litigate

the malpractice action in New Hampshire falls short of reaching

constitutional significance. For Attorney Farrell and the

Speiser firm, the burden of defending in New Hampshire would not

be substantively different from the burden of litigating in

Florida. Of course, the comparative burden on Attorney Olin and

the Podhurst firm of litigating in New Hampshire rather than

-27-

their home state would be greater. In Pritzker, however, this 

Court recognized that defending in a foreign jurisdiction almost

always presents some measure of inconvenience, and hence this

factor becomes meaningful only where a party can demonstrate a

"special or unusual burden." 42 F.3d at 64. When, as here, a law

firm regularly represents clients outside its home state, we

conclude that the burden is neither special nor unusual.

b. The Forum State's Adjudicatory Interest b. The Forum State's Adjudicatory Interest

This Court has recently observed that "[t]he purpose of

[this] inquiry is not to compare the forum's interest to that of 

some other jurisdiction, but to determine the extent to which the

forum has an interest." Foster-Miller, Inc. v. Babcock & Wilcox 

Canada, 46 F.3d 138, 151 (1st Cir. 1995)(emphasis in original). 

Although it is true that a forum state has a demonstrable

interest in obtaining jurisdiction over a defendant who causes

tortious injury within its borders, see Ticketmaster, 26 F.3d at 

211, New Hampshire has a far less compelling interest in the

prosecution of a legal malpractice suit stemming from an injury

that occurred outside of its borders. Here, the acts comprising

the defendants' alleged negligence occurred almost entirely

outside of New Hampshire. See Donatelli, 893 F.2d at 472 

("[A]part from a generalized concern for the rights of its own

domiciliaries, the [forum] state has no real interest in

adjudicating the controversy"). This factor thus cuts against

jurisdiction.

-28-

c. The Plaintiffs' Interest in Obtaining Convenient Relief c. The Plaintiffs' Interest in Obtaining Convenient Relief

The third factor to consider is the plaintiffs'

interest in obtaining convenient and effective relief. We need

not dwell long here. This Court has repeatedly observed that a

plaintiff's choice of forum must be accorded a degree of

deference with respect to the issue of its own convenience. See, 

e.g., Foster-Miller, Inc., 46 F.3d at 151; Pritzker, 42 F.3d at 

64; Ticketmaster, 26 F.3d at 211. Here, unquestionably, it would 

be more convenient for the Sawtelles to litigate their

malpractice claim in their home state rather than elsewhere.

d. The Administration of Justice d. The Administration of Justice

We next evaluate the judicial system's interest in

obtaining the most effective resolution of the controversy.

Although the Virginia defendants contend that this consideration

would best be satisfied by litigating the case in Florida, where

some of the defendants reside and where the wrongful death action

was pending, as in our oft-cited earlier case, "the interest of

the judicial system in the effective administration of justice

does not appear to cut in either direction" here. Ticketmaster, 

26 F.3d at 211.

e. Pertinent Policy Arguments e. Pertinent Policy Arguments

This final "gestalt" factor requires us to consider the

common interests of all sovereigns in promoting substantive

-29-

social policies. Here, the most prominent policy implicated is

the ability of a state to provide a convenient forum for its

residents to redress injuries inflicted by out-of-forum actors.

See Burger King, 471 U.S. at 473. This policy assumes added 

importance in our age of advanced telecommunications, which has

so facilitated the representation of geographically distant

clients that it is not uncommon for a firm to represent a client

without meeting him or her in person or traveling to the client's

state of residence. 

Although the concept of long-arm jurisdiction must

adjust as technological advances render blurry the boundaries

between the states, see World-Wide Volkswagen, 444 U.S. at 308-09 

(Brennan, J., dissenting), we must heed the warning that "it is a

mistake to assume that this trend heralds the eventual demise of

all restrictions on the personal jurisdiction of state courts."

Pickens v. Hess, 573 F.2d 380, 387 (6th Cir. 1978)(quoting Hanson 

v. Denckla, 357 U.S. at 251). To permit the exercise of personal 

jurisdiction over the defendants in this case would require this

Court to disregard that sage advice.

IV. Conclusion IV. Conclusion

In review, the Sawtelles have demonstrated little more

than a bare minimum, if that, with respect to the first two

stages of the due process inquiry. The plaintiffs' showing of

relatedness is weak because their claim for legal malpractice did

not directly arise out of, nor was it related (in any meaningful

-30-

way) to the law firms' contacts with New Hampshire. Moreover,

the law firms' telephone communications and correspondence into

the forum did not represent a "purposeful availment" by the firms

of the privilege of conducting business activities in New

Hampshire. The law firms did not meaningfully invoke the

benefits and protections of the laws of New Hampshire and the

haling of such defendants into New Hampshire's courts was not

foreseeable.

The frailty of plaintiffs' showings on relatedness and

purposeful availment is not strengthened as a result of our

consideration of the reasonableness of an exercise of

jurisdiction over the defendants by a New Hampshire court.

Although the exercise of jurisdiction may be proper when a

borderline showing of relatedness and purposeful availment is

supported by an especially solid showing of reasonableness, see

Ticketmaster, 26 F.3d at 210, our "gestalt" analysis in the 

instant case fails to reveal any such fortification.

Accordingly, the decision of the district court is AFFIRMED.  AFFIRMED

-31-